**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **GABRIEL JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 3:22 C 50290 |
| | ) | |
| **JUSTIN WILKS, Warden at the Dixon** | ) | **Judge Rebecca R. Pallmeyer** |
| **Correctional Center; WEXFORD HEALTH** | ) | |
| **SOURCES INCORPORATED; NURSE** | ) | |
| **CHADDICK; MS. CARPENTER,** | ) | |
| **Healthcare's Administrator;** | ) | |
| **Dietary Supervisor JENNIFER CARTER,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER**

For the reasons explained below, Defendants Jennifer Carter and Justin Wilks' motion for summary judgment [197] is granted, and Plaintiff Gabriel Jackson's motion for leave to file a Fourth Amended Complaint [206] is denied.

**STATEMENT**

Plaintiff Gabriel Jackson alleges he was denied proper treatment for an infected wound on his leg and denied a medically prescribed low-sodium diet while in custody at the Illinois Department of Correction's ("IDOC") Dixon Correctional Center ("Dixon"). (Third Amended Compl. ("TAC") [153] ¶ 2.) The alleged misconduct occurred between May 2019 and February 2022. (Id. ¶¶ 13(a)–(g).) Jackson brought this lawsuit against Defendants—the prison administrators, medical professionals, and healthcare service company allegedly responsible for the improper denials—seeking relief under 28 U.S.C. § 1983 for violations of the Eighth Amendment. (Id. ¶¶ 2, 7–11.) Jackson also brings state law negligence claims against one Defendant, Chaddick, a nurse at Dixon. (Id. ¶¶ 19–23.) This ruling addresses the motion for summary judgment filed by Defendants Wilks and Carter.

Defendant Wilks was either the Assistant Warden of Operations or Acting Warden at Dixon during the time relevant to this lawsuit. (Defs. Local Rule 56.1(a)(2) Statement of Undisputed Material Facts ("DSOF") ¶ 2.) Defendant Carter is a Food Service Program Manager at Dixon; among other responsibilities, she "plans, develops, and coordinates food service programs, directs proper and healthy sanitation standards, and plans schedules and menus for general and/or special diets." (Id. at ¶ 17.) Carter, however, did not begin working at Dixon until July 2023. (Id. ¶ 16.)

Jackson initiated this action on March 2, 2022. ([1].) Over the next two years, Jackson and Defendants (as well as former Defendant IDOC) engaged in a back and forth that saw Jackson file several amended complaints in response to motions to dismiss. The Third Amended Complaint ([153]), filed February 7, 2024, is the operative one.

The undersigned judge was assigned this case on July 24, 2024. ([175].) On August 14, 2024, the court issued an order directing that all discovery be completed by April 30, 2025. ([180].) Following a telephone conference on December 18, 2024, the court ordered that Defendants file any dispositive motions predicated on qualified immunity by January 24, 2025. ([191].) The court later extended that deadline to February 19, 2025. ([196].) Defendants Carter and Wilks filed the instant motion for summary judgment on that date, Jackson responded on April 2, 2025, and Carter and Wilks filed their Reply on April 17, 2025. ([197], [201], [202].)

Jackson, although represented by counsel, has filed neither a response to Defendants' statement of facts in support of summary judgment, nor his own statement of facts, called for in Local Rule 56.1. The court would have been inclined to overlook the failure to comply with the rules if the evidence Jackson presented nonetheless created a genuine dispute as to material facts supporting Defendants' qualified immunity arguments. But Jackson has failed to present *any* admissible evidence in support of his opposition to summary judgment. Jackson offers no deposition testimony and no affidavits or declarations, even from himself. Instead, Jackson has provided (1) scanned copies of prison grievances he filed at Dixon, and (2) excerpts from what appears to be a report assessing IDOC's compliance with the requirements of a consent decree entered to resolve another case; the full report is attached to Jackson's Third Amended Complaint. (*See* [201] at 7–35; Ex. 1 to TAC, [153] at 18.). Both documents are inadmissible hearsay, which the court may not consider at summary judgment. *See Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023).

The court is thus left to consider only Carter and Wilks' side of the story. Based on their statement of facts, there is no evidence to support a claim that either of these Defendants violated Jackson's Eighth Amendment rights, and much less that "clearly established" law rendered their conduct unconstitutional; Jackson's claims against Carter and Wilks thus cannot survive the qualified immunity inquiry. *See Prude*, 76 F.4th at 659.

A prison official violates the Eighth Amendment if the official is deliberately indifferent to an inmate's serious medical condition. *Ollison v. Gossett*, 136 F.4th 729, 735 (7th Cir. 2025) (citation omitted). "Deliberate indifference is a subjective mental state; the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (citation omitted). This is a high bar because it requires a showing of "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id.* (citation omitted).

On Carter and Wilks' account, neither had personal awareness of any improper denial of medical care or prescribed diet suffered by Jackson. As explained above, Carter was not employed at Dixon during the time period relevant to this case; she has never reviewed or responded to any grievance filed by Jackson and does not know who Jackson is. (*Id.* ¶ 27.) Carter cannot be liable for Jackson's alleged mistreatment.

As Acting Warden and Assistant Warden at Dixon, Wilks typically would not personally review inmate grievances; such tasks were handled on his behalf by designees. (*Id.* ¶ 10.) Wilks only had personal knowledge of and involvement with two grievances filed by Jackson. (*Id.*; *see generally* Wilks Grievances [197-5].) In the first grievance, filed December 19, 2021, Jackson asserted he was improperly given Tylenol by medical staff to address pain from his leg wound. (*See* Wilks Grievances at 5–8.) Jackson says that Tylenol interfered with the function of a heart medication Jackson was also taking. (*Id.* at 6–7.) According to a subordinate grievance officer's report dated December 29, 2021, Jackson was examined by a physician named Dr. Zahtz on December 28, 2021, who found "no indication that Tylenol [was] causing [Jackson's] heart

medications not to work." (*Id.* at 6.) The report also noted that Jackson had seen a cardiologist on November 17, 2021, and that the cardiologist was aware Jackson was taking Tylenol and had not recommended that Jackson discontinue or avoid the medication. (*Id.*) Wilks signed off on the grievance officer's determination that Jackson had adequate access to healthcare services and was receiving treatment. (*Id.* at 6.) Based on that report, Wilks states he "had no reason to believe Jackson was not receiving appropriate medical care."[1] (DSOF ¶ 10.) Wilks was "entitled to defer to the judgment of jail health professionals" so long as he did not ignore Jackson's complaint. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The second grievance Wilks reviewed was filed by Jackson on December 26, 2021; there, Jackson alleged he was not receiving a prescribed low-sodium diet, and that consumption of the ordinary prison diet was causing a buildup of fluid in Jackson's lungs. (*See* Wilks Grievances 1–4.) Jackson sought emergency review of the grievance, and Wilks determined that an "expedited response" was appropriate. (*See id.* at 2; DSOF ¶ 10.) According to a subordinate grievance officer's report, dated January 6, 2022, Jackson had been "added to sick call" for January 2, 2022 "to further assess" this concern, and Jackson's existing dietary orders had been "scanned to dietary to ensure proper diet given"; on that basis, the grievance officer was "reasonably satisfied" that Jackson's concern had been addressed and that he had access to dietary care. (Wilks Grievances at 2.) For his part, Wilks says he was not involved with the resolution of this grievance after he determined that the expedited response was appropriate.[2] (DSOF ¶ 10.)

Jackson appears to argue that Wilks can be held liable under § 1983 because he violated an IDOC regulation by routinely delegating review of inmate grievances to subordinates. (*See* [201] at 4 (citing ILL. ADMIN. CODE Tit. 20, § 504.805(b)). Even if Wilks violated the regulation—which the court cannot conclude he did[3]—a violation of IDOC regulations (or other state laws) alone is insufficient to establish a constitutional violation. *Courtney v. Butler*, 66 F.4th 1043, 1052–53 (7th Cir. 2023).

Jackson also argues that Wilks can, as a matter of course, be held liable for any failures of his designees resulting in Eighth Amendment violations. (*See* [201] at 3.) But even the cases Jackson cites do not support that proposition. What the cases say is that a supervising official in Wilks' shoes cannot escape liability for Eighth Amendment violations that they knew about or turned a blind eye to simply by formally delegating the process of grievance review to someone else. *See Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *5 (N.D. Ill. July 2, 2001)

---

[1] The court considers the out-of-court statements encompassed in the grievance reports not for the truth of what they assert but only for their effect on the reader, Wilks.

[2] It is difficult to tell from the signature, but Wilks may have ultimately signed off on the grievance officer's determination for this grievance on January 6, 2022. (*See* Wilks Grievances at 2.)

[3] The IDOC regulation Jackson cites states that "[n]o other individual may routinely perform duties *whenever a Section in this Subpart specifically states* the Director or Chief Administrative Officer *shall personally perform the duties*." ILL. ADMIN. CODE Tit. 20, § 504.805(b) (emphasis added). Jackson does not direct the court to any regulatory provision specifically stating that the Director or Chief Administrative Officer of an IDOC facility shall personally review all grievances. Further, the very regulation Jackson relies on also states that "[u]nless otherwise specified, the Director or Chief Administrative Officer may delegate responsibilities stated in this Subpart to another person or persons or designate another person or persons to perform the duties specified." ILL. ADMIN. CODE Tit. 20, § 504.805(a).

(disapprovingly describing this maneuver as a "shell game"); *see also Dixon v. Brown*, No. 3:16 C 1222-GCS, 2021 WL 1171657, at *8 (S.D. Ill. Mar. 29, 2021); *Birch v. Jones*, No. 02 C 2094, 2004 WL 2125416, at *7 (N.D. Ill. Sept. 22, 2004); *Powell v. Godinez*, No. 93 C 3469, 1997 WL 603927, at *5 (N.D. Ill. Sept. 24, 1997). Moreover, even if Jackson were correct on the law, he has presented no admissible evidence that Wilks' subordinates *did* violate the Eighth Amendment.

For the reasons explained above, Defendants Carter and Wilks' motion for summary judgment is granted.

That leaves Jackson's motion for leave to file a Fourth Amended Complaint. Jackson would like to add as Defendants certain unnamed "Facility Clinic Review members"; Jackson argues this would be justified because he only learned from Carter and Wilks' summary judgment filings that the Faculty Clinic Review members were ultimately responsible for failing to provide him his low-sodium diet. ([206] at 1.)

Jackson initiated this litigation more than three years ago. Trial is set for September 8 of this year. (*See* [205].) Jackson has not even attempted to explain why he could not have learned of these Defendants' involvement in his case via discovery prior to Carter and Wilks' moving for summary judgment. Nor is it clear to the court that any claims ultimately asserted against newly-named Defendants would survive a timeliness challenge. Leave to amend is denied.

ENTER:

Dated: June 13, 2025

_____
REBECCA R. PALLMEYER
United States District Judge

4